UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------X
UNITED STATES OF AMERICA,
                Plaintiff                    09 CR 135 (SJ)

                v.

                                    <u>ORDER ADOPTING</u>
                                    <u>REPORT AND</u>
                                    <u>RECCOMENDATION</u>

JOHN A BURKE, et. al,
                Defendant.
--------------------------------------------------X

A P P E A R A N C E S:

LORETTA E. LYNCH
UNITED STATES ATTORNEY
271 Cadman Plaza East
Brooklyn, NY 11201
By:    Evan M. Norris
        Jacquelyn M. Rasulo
        Taryn A. Merkl
        Whitman G.S. Knapp
        Duncan Patrick Levin
Assistant United States Attorneys
Attorneys for the Government

HOWARD L. JACOBS, ESQ.
401 Broadway, Suite 1902
New York, NY 10013
By:    Howard L. Jacobs
Attorney for Defendant John Burke

RICHARD JASPER, ESQ.
276 Broadway, Suite 501
New York, NY 10001
By:    Richard Jasper
Attorney for Defendant John Burke

JOHNSON, Senior District Judge:

Defendant John Burke has been indicted on racketeering conspiracy based on predicate acts including three murders, narcotics trafficking, robbery and other offenses. He filed two omnibus pre-trial motions seeking various forms of relief, including dismissal of the charges, suppression, severance, particularization, Brady material, and an order requiring the Government to narrow the charges on the grounds that they are multiplicitous. (See Docket Entry ("DE") 123 and 124 (duplicate entry); and DE177.) Presently before the Court is a Report and Recommendation (the "R&R") prepared by United States Magistrate Judge James Orenstein, recommending that the Court denies Burke all of his requests for relief. (DE 202.) Burke timely filed his objections, (DE 209), and the Government did not file any. After careful consideration of Burke' objections, and for the reasons that follow, this Court adopts Judge Orenstein's R&R in its entirety.

## **DISCUSSION**

### A.  Standard of Review

A district judge reviews those portions of a Report and Recommendation to which a party has timely objected under a de novo standard of review.  28 U.S.C. § 636(b)(1)(C).  After reviewing the Report and Recommendation of a magistrate judge, the district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). A district judge is required to "determine de novo any part of the magistrate judge's disposition that has been properly objected to."  FED. R. CIV. P. 72(B)(3).  The district judge is not required to review, under a de novo or any other standard, factual or legal conclusions of the magistrate judge as to those portions of the Report and Recommendation to which no objections are addressed, so long as such are not clearly erroneous.  28 U.S.C. § 636(b)(1); FED. R. CIV.P. 72(B)(3); see also Allen v. Senkowski, No. 97-CV-3296 (NBM), 2003 WL 169788, at *1 (S.D.N.Y.2003) ("[T]the uncontested portions of the magistrate judge's report may be adopted unless they show clear error.")

In this case, Burke has logged objections to the following sections of Judge Orenstein's R&R:

1.  R&R Section II.A—Dismissal of all counts: Double Jeopardy Clause. (See R&R DE 202 at 2–3; Burke's Objections DE 209 at 1–6.)

2. R&R Sections II.B and II.K—Dismissal Counts One, Four and Five: Statute of Limitations (See R&R DE 202 at 3–5, 23–24; Burke's Objections DE 209 at 1–6.)
3. R&R Section II.C—Suppression (See R&R DE 202 at 5–11; Burke's Objections DE 209 at 7–12.)
4. R&R Section II.F—Multiplicity: Charges Related to the Gebert Murder (See R&R DE 202 at 14–15; Burke's Objections DE 209 at13.)
5. R&R Section II.G— Multiplicity: Firearms Offenses (See R&R DE 202 at 15–16; Burke's Objections DE 209 at 13.)
6. R&R Section II.I— Dismissal of Counts Four and Five: Vagueness (See R&R DE 202 at 18–20; Burke's Objections DE 209 at 14.)
7. R&R Section II.I— Pre-Indictment Delay: Racketeering Act Two (See R&R DE 202 at 20–22; Burke's Objections DE 209 at 14–15.)
8. R&R Sections II.L and II.M— Severance of Co-Defendants Charged with Witness Tampering and Severance of Racketeering Act Two, respectively: Firearms Offenses (See R&R DE 202 at 24–26; Burke's Objections DE 209 at 15–16.)

Below the Court addresses these objections in seriatim.[1]

## B. R&R Section II.A—Dismissal of all Counts: Double Jeopardy Clause and R&R Section II.F—Multiplicity: Charges Related to the Gebert Murder

Burke moves to dismiss the Indictment on double jeopardy grounds, arguing that the Indictment, which charges him with the murder of John Gebert and Bruce Gotterup, among other things, should be dismissed pursuant to the Double Jeopardy Clause because the State of New York (the "State" or "New

---

[1]Burke does not object to the portion of Judge Orenstein's R&R that deals with Bill of Particulars, Discovery, Brady and Severance of Racketeering Act Two, which alleges that Burke together with others, conspired to kill and killed Daniel Zhan 28 years ago, R&R Subsections D, E, H, and M respectively. Finding no clear error, the Court accordingly adopts Judge Orenstein's recommendation on these matters without any further analysis. See 28 U.S.C. § 636(b)(1).

York") has already tried him for these murders, and in its prosecution of him New York was effectively a tool of the federal government. As such, Burke maintains that his case falls within a recognized exception to the dual sovereignty doctrine whereupon collusion between federal and state authorities in an initial prosecution could bar the second prosecution pursuant to Barkus v. Ill., 359 U.S. 121 (1959). Burke claims that the FBI "was intimately involved in the State investigation of both the Gotterup and Gebert homicides;" and submits, in support of this claim, three documents showing that (i) the FBI requested the State investigate Burke for the murder of Gebert four months before he was indicted by State prosecutors; (ii) a FBI agent continued to participate in the investigation of the State's case including being present for the interview of key State witness, and (iii) that the State shared its investigative reports and progress on the case with the FBI. (See Burke's Mem. of Law in Support, DE 123-1, 124-1.) Additionally, Burke requests an evidentiary hearing to better determine the Government's involvement in the State prosecutions.

Judge Orenstein, citing the well-settled principle in this Circuit that cooperation among state and federal investigative agents is not sufficient to defeat the applicability of the dual sovereignty doctrine for purposes of the Double Jeopardy Clause, found Burke's submissions were insufficient to make a showing

that the State was operating as a tool of the Government or even demonstrate that an evidentiary hearing is warranted.  (DE 200 at 3.)

Burke, in his objections to the R&R' findings and recommendations on his Double Jeopardy challenge, submits that he is at least entitled to an evidentiary hearing on the ground that the Government failed to submit an affidavit from any of the prosecutors involved in the state prosecution of Burke for the murders. Such an affidavit, he maintains, is key to the cases Judge Orenstein relied on in reaching his decision wherein defendants in those cases were either granted a hearing or the Government provided affidavits from prosecutors involved in prior prosecutions of these defendants.

As an initial matter, even assuming arguendo the truth of all of Burke's factual allegations in support of this motion—that (i) the FBI requested the State investigate Burke for the murder of Gebert four months before he was indicted by State prosecutors; (ii) a FBI agent continued to participate in the investigation of the State's case including being present for the interview of key State witnesses, and (iii) that the State shared its investigative reports and progress on the case with the FBI—together these facts do not amount to anything more than a showing of mere cooperation between two sovereigns.   It is well-settled law that such cooperation does not offend the precepts of the Double Jeopardy Clause.  <u>Barkus</u>, 359 U.S. at 123.   Even outright joint investigation between the State and the

Feds—which the facts alleged here do not even suggest—does not preclude separate prosecutions on double jeopardy grounds. See United States v. Aboumoussallem, 726 F.3d 906, 910 (2d Cir. 1984) ("At most, there was here no more than a joint investigation of criminal activity, which we have held does not preclude separate prosecutions.) In sum, Burke's alleged facts fall far short of suggesting that New York State prosecutors were not acting independently when they indicted and prosecuted him. See United States v. Coonan, 938 F.2d 1553, 1563 (2d Cir. 1991) (finding that even where the record establishes that federal officials acted in cooperation with state authorities, this was insufficient to support a claim that the state in bringing its prosecution was merely a tool of the federal authorities).

Additionally, having reviewed the relevant authority, the Court is not persuaded that an evidentiary hearing is warranted here. Contrary to Burke's assertion that the Government's failure to submit a supporting affidavit from the State, such an affidavit was at play in just one of the cases relied on by Judge Orenstein—and was not at all dispositive. See Russotti, 717 F.2d 27 (2d. Cir. 1983). In Russotti, the Second Circuit, in recognizing and affirming a district court's decision to deny an evidentiary hearing on a similar motion, stated in passing that a government affidavit "obviated whatever necessity there may have been for conducting a hearing." Id. at 31. The dispositive issue, however, was the

fact that the defendants there, similar to Burke here, "offered little in the way of proof of federal orchestration other than the barest conclusory allegations." Id. at 31. Notably, Russotti emphasized that the decision to deny such motion without a hearing was well within the discretion of the district court. Id. Additionally, Burke's reliance on United States v. Pena, 910 F. Supp. 535 (D. Kan. 1995)—a district court decision from outside this Circuit—is similarly misplaced. There the court granted a defendant's request for a hearing on a similar motion alleging double jeopardy because that case concerned a federal criminal prosecution following a state civil forfeiture action in state court. Thus, the motion turned on the need to determine the proper allocation of the forfeiture proceeds between state and federal authorities. The court granted the hearing only after having found that the defendant's application, unlike Burke's, suggested that more than "mere cooperation," between federal and state prosecutors occurred. Pena, 910 F. Supp. at 541.

Finally, relying on yet another district court decision from outside this Circuit, United States v. Gardner, 417 F. Supp. 2d 703 (D. Md. 2006), Burke urges the Court to reject the "rigid application" of the Double Jeopardy standard set forth in Blockburger v. United States, 283 U.S. 299 (1932). (DE 209 at 2.) Burke asks the Court to instead adopt the fact-based approach employed in Gardner pursuant to which the Counts of the Indictment relating to the murders of Gebert and

Gotterup as well as the Zhan conspiracy to murder in aid of racketeering should be viewed as wholly contained within the RICO conspiracy charge. Thus, according to Burke, these charges should be considered the same offense for Double Jeopardy purposes. In light of the fact that this Circuit recently considered and rejected the exact same arguments in United States v. Basciono, 599 F.3d 184, 197–99 (2d. Cir. 2010), as Judge Orenstein correctly noted in the R&R, the Court finds this branch of Burke's objections to the portion of the R&R that recommends denying his motion to dismiss the indictment on the ground that it violates the Double Jeopardy clause without merit. Accordingly, Judge Orenstein's recommendation to reject Burke's application for dismissal of all counts on double jeopardy grounds is adopted.

Burke relies on the same arguments in his objections to Section II.F of the R&R, wherein Judge Orenstein's recommends denying Burke's application to compel the Government to elect among (a) the racketeering charges (Racketeering Act Four and Counts Two and Three) as well as (b) the charges relating to the Gebert murder (Counts Four or 5) on which to proceed on. It follows then that the Court adopts Judge Orenstein's recommendation for the same reasons outlined above.

### C. R&R Sections II.B and II.K—Dismissal Counts One, Four and Five: Statute of Limitations

Burke moves to dismiss Counts One, Four and Five on statute of limitations grounds, arguing that the RICO conspiracy charged in the Indictment returned on July 31, 2008 was completed at least two years before July 31, 2003—which is the applicable statute of limitations date pursuant to the governing 5-year limitation period per 18 U.S.C. § 924. According to Burke, Count One is infirmed because it does not allege any racketeering acts beyond June 2001, when he was arrested by the State for the murders of Gebert and Gotterup; and beyond which, he maintains, further contact with members of the charged enterprise ceased. Burke further asserts that Count 4 must also be dismissed on these grounds as it is based on Count 1, as must Count 5 as it is based on Count 4.

Citing <u>United States v. Salinas</u>, 552 U.S. 52, 65 (1997), Burke argues that the Government cannot simply rely on an allegation that he continued as an associate of an alleged organized crime family into the limitations period. Burke argues that the Government must prove that he participated in the enterprise's affairs through the pattern alleged in the Indictment and within the limitations period. Nor, he asserts, should the Government get the benefit of the presumption of continuity articulated in <u>United States v. Spero</u>, 331 F.3d 57 (2d Cir. 2003), to bring the case within the limitations period.

Judge Orenstein recommends against this application. Burke in his objection to this portion of the R&R does not raise any new arguments. Nor does he identify any error in the factual findings made by Judge Orenstein or in the application of the law to the facts. Without pointing to any authority, Burke simply re-asserts that Counts One, Four and Five should be dismissed as time-barred because the last predicate act occurred two years prior to the limitation period, due to his incarceration.

As a general matter, it is well-settled that one may be liable for RICO conspiracy long after the last known predicate act. United States v. Pizzonia, 577 F.3d 455, 466 (2d Cir. 2009) ("The purpose of a RICO conspiracy is to conduct or to participate in the conduct of a charged enterprise's affairs, not . . . to commit predicate acts") (internal quotation and citations omitted). Moreover, an alleged conspirator's incarceration alone is not sufficient proof that he withdrew from the alleged conspiracy or that the conspiracy was discontinued. See United States v. Sadiki, No. 10-2994, 2011 WL 1227813, at *15 (2d. Cir. Mar. 28, 2011) (holding that imprisonment during a conspiracy is not, as a matter of law, a withdrawal from the conspiracy; and nor does incarceration create a presumption of withdrawal); United States v. Massino, 546 F.3d 123, 137 (2d Cir. 2008) (observing that there is no rebuttable presumption that a person withdraws from a conspiracy when he is arrested). It thus follows that whether Burkes' incarceration

constitutes a withdrawal from the alleged conspiracy is "a fact-dependent question" that is not appropriate for a pretrial motion. See, e.g., United States v. Carnesi, 461 F. Supp.2d 97, 99 (E.D.N.Y. 2006) (holding that whether a defendant withdrew from a conspiracy, are issues of fact for the jury to decide therefore making a pretrial request for dismissal of conspiracy charges on this issue premature). Under these principles, the Government must also be entitled to the benefit of the presumption of continuity at this stage. See generally United States v. Yannotti, 415 F. Supp. 2d 280, 290 (S.D.N.Y. 2005) (noting that "in the absence of any proof of withdrawal or abandonment, courts have held that the presumption of continuity permits the inference that the defendant is still involved in the conspiracy and therefore liable for the acts of his co-conspirators"); United States v. Spero, 331 F.3d 57, 60 (2d Cir. 2003); United States v. Flaharty, 295 F.3d 182, 192 (2d Cir. 2002) (noting that it is the defendant's burden to prove "that the conspiracy was terminated or that [the defendant] took affirmative steps to withdraw."). Judge Orenstein's recommendation to reject Burke's statute of limitations challenge to Counts One, Four and Five is therefore adopted.

**D. R&R Section II.C—Suppression**

Burke seeks to suppress statements he allegedly made to law enforcement agents on May 15, 2001 and June 5, 2001, respectively. Concerning the May 15, 2001 statements, which he allegedly made during a nearly two-hour interview with

two detectives who arrived un-announced on a non-visiting day to his prison,[2] Burke argues that he felt forced to speak to the detectives after a prison correction officer threatened him with a transfer to the Special Housing Unit (the "SHU") pursuant to which he would have been confined to his own cell for 23 hours a day, in violation of his Fifth Amendment rights. Concerning his June 5, 2001 statements, which he allegedly made after being arrested on an indictment for the murders of Gerbert and Gotterup, he doubly argues that they should be suppressed because they were not made at all and/or were improperly elicited after he was placed under arrest, in violation of his right to counsel under the Sixth Amendment.[3]

After an evidentiary hearing, Judge Orenstein found, with respect to both statements, that Burke's testimony was simply not credible.[4] As a general matter,

---

[2] Burke is currently serving a prison term in state custody on an unrelated parole violation at Ulster Correctional Facility.

[3] As Judge Orenstein notes, the record is somewhat unclear as to the precise grounds on which Burke seeks to suppress the alleged statements, which he does not, to begin with, concede that he made. (See R&R DE 202 at 9; DE at 10 FN9.) This ambiguity, however, does not alter Judge Orenstein's disposition of this issue, and thus this Court's adoption of the R&R, which turns upon credibility.

[4] Specifically, as to the May 15 statements, Judge Orenstein finds that Burke's assertion that he was threatened with solitary confinement in the event he declined to speak with the detectives was not credible and concludes that Burke was not subject to custodial interrogation and thus Miranda was not implicated. Burke's objection to this finding on the ground that his testimony is "undisputed," because the detective who did testify was not in a position to hear the conversation with the corrections officer who threatened him with time in the hole, is wrongheaded. Judge Orenstein specifically found his testimony on the issue incredible. Concerning his June 5 statements, Judge Orenstein similarly resolved this issue and found the testifying detective more credible, finding,

in a criminal suppression context, where a magistrate judge conducts an evidentiary hearing and makes credibility findings on disputed issues of fact, this Court will accept those credibility findings.  See Carrion v. Smith, 549 F.3d 583, 588 (2d Cir. 2008) (noting that "a district judge should normally not reject a proposed finding of a magistrate judge that rests on a credibility finding without having the witness testify before the judge") (internal citation omitted).  Here this Court, in making its de novo determination, has no doubts concerning Judge Orenstein's credibility findings and thus need not conduct a hearing.  See Cullen v. United States, 194 F.3d 401 (2d Cir. 1999) (ruling that "without an evidentiary hearing, the District Court should not reject the Magistrate Judge's proposed credibility finding"); Grassia v. Scully, 892 F.2d 16, 19–20 (2d Cir. 1989) (ruling that "the district judge should not enter an order inconsistent with the credibility choices made by the magistrate without personally hearing the live testimony of the witnesses whose testimony is determinative") (internal citation omitted); see also United States v. Rosa, 11 F.3d 315, 329 (2d Cir. 1993) (upholding a district judge's rejection of a magistrate judge's proposed ruling on a suppression motion because the district judge had heard the testimony of the key witnesses and observing that a district judge who rejects a magistrate judge's determination based

among other things, that Burke was more selective than the detective in purporting to rely on the passage of time to explain his difficulty in providing a consistent account of events.

on credibility assessments needs to hear testimony from the witnesses whose credibility is in question). The Court accordingly adopts Judge Orenstein's findings and proposed rulings on Burke's motion to suppress.

### E. R&R Section II.G— Multiplicity: Firearms Offenses

Burke moves to dismiss, on multiplicity grounds, Count Four, pursuant to which he is charged with a crime of violence between an eighteen-year period and of using, carrying and possessing a firearm in connection with the racketeering conspiracy charged in Count One, because it is a lesser included offense to Count Five, pursuant to which he is charged with the murder of Gebert through the use of a firearm in the course of committing the offense charged in Count Four. Judge Orenstein recommends denying this application because under the law of this Circuit overlap between two counts is no bar to the prosecution of lesser and greater forms of an offense in the same trial. Burke, in his objection to this portion of the R&R, does not attempt to address the applicable law governing such prosecutions or cite to any authority at all in support of his request that the Government be required to elect which counts to proceed on. Judge Orenstein is correct on the law, and this portion of the R&R is, accordingly, affirmed and adopted without any further analysis.

### F. R&R Section II.I— Dismissal of Counts Four and Five: Vagueness

Burke claims that Counts Four and Five of the Indictment do not contain the requisite legal or factual specificity to allow him to determine what he is charged with or what crimes the grand jury indicted him for and thus are fatally/impermissibly vague. Judge Orenstein recommends against dismissal of both counts. With respect to Count 4, while acknowledging that Count 4 addressed a "a vast range of conduct," Judge Orenstein finds that Burke has not even attempted to make the prerequisite showing of actual prejudice and thus concludes that he is not entitled to any form of relief. With respect to Count 5, which charges Burke with the use of a gun in a murder of a specific person on a specific day by contrast, Judge Orenstein finds that this is more than specific enough. Burke, in his objection to this portion of the R&R does not raise any new arguments, assert any error in the factual findings made by Judge Orenstein or in the application of the law to the facts. Accordingly, this portion of the R&R is affirmed and adopted without any further analysis.

### G. R&R Section II.I— Pre-Indictment Delay: Racketeering Act Two

Burke moves to dismiss Racketeering Act Two of the Indictment, which charges him with the conspiracy to murder and the actual murder of Daniel Zahn in or about and between May 1982 and August 28, 1982, on the grounds of pre-indictment delay and requests an evidentiary hearing. Burke maintains the nearly

30-year pre-indictment delay implicates his due process rights because several witnesses who purportedly served as his alibi witnesses in the State prosecution of the Zahn murder are either deceased or otherwise unavailable to testify.  Given such substantial prejudice, he asserts, the burden then shifts to the Government to explain the delay.

Judge Orenstein, while assuming, without finding, that Burke sufficiently demonstrated prejudice flowing from the pre-indictment delay nevertheless found that Burke failed to meet his prerequisite burden of showing improper prosecutorial motive for the delay.  Burke, in his objection to this portion of the R&R does not raise any new arguments, identify any error in the factual findings made by Judge Orenstein or in the application of the law to the facts.  Rather, without pointing to any authority, he simply re-asserts that he is entitled to an evidentiary hearing as to the cause of the delay.

Under the due process standard articulated in United States v. Marion, 404 U.S. 307, 324 (1971) applicable to pre-indictment delay, a defendant must affirmatively show that  the delay caused both substantial actual prejudice and that the delay was caused by unjustifiable government conduct so as to gain a tactical advantage.  See also United States v. Lovasco, 431 U.S. 783 (1977); Denis v. Upstate Corr. Facility, 361 F.2d 759, 760 (2d Cir. 2004); United States v. Elsbery, 602 F.2d 1054, 1058 (2d Cir. 1979), cert. denied, 444 U.S. 994 (1979).  Here, as

an initial matter, while it is not difficult to agree with Burke that his defense is significantly complicated by the passage of time, as a general matter, for a myriad of reasons courts are reluctant to prescribe any time period in which the government must seek a particular indictment.  See Lovasco, 431 U.S. at 790–95. Second, concerning the prejudice prong of the governing standard, even assuming, as Judge Orenstein did, that the alleged unavailability of purported alibi witnesses who testified for Burke in the State trial is the type of actual prejudice that would prevent the defendant from receiving a fair trial or otherwise ultimately justify dismissal for pre-indictment delay, compare United States v. Cornielle, 171 F.3d 738, 752 (2d Cir. 1999) (noting that "prejudice is commonly demonstrated by . . . the unavailability of a key witness") with, e.g., United States. v. Long, 697 F.Supp. 651 (S.D.N.Y.  1988) (noting that "[f]aded memories or unavailable witnesses are inherent in any delay, even if justifiable") (citing Elsbery, 602 F.2d at 1059), such prejudice alone is not sufficient for the relief Burke seeks.  Burke must also adequately allege that the Government has engaged in deliberate actions to delay the indictment in this case for its own benefit, and here, other than citing the length of time between the Zhan murder and the time of the indictment, Burke has made no such detailed allegations.  See Lovasco, 431 U.S. at 796 (accepting defendant's claim of prejudice based on loss of testimony of two material witnesses but finding no due process violation because delay was not improper).  Moreover, he has

otherwise cited no authority in support of his assertion that he is entitled to a hearing on the issue, and the Court can find none. Burke has therefore not shown that a hearing is necessary. See, e.g., United States v. Santos, No. 98CR736, 1999 WL 4912, at *5 (S.D.N.Y Jan. 5, 1999) (ruling that where a defendant "failed to establish either substantial actual prejudice as a result of the pre-indictment delay or unjustifiable government conduct, he is not entitled to a hearing as to the cause of the delay) (internal citations omitted); United States v. Davis, 598 F. Supp. 453 (S.D.N.Y. 1984) (denying motion for an evidentiary hearing despite a claim of prejudice arising out of the death of defense witness); Hoff v. Kelly, No. 86-cv-2332, 1987 WL 10183, at *2 (E.D.N.Y. Apr. 13, 1987) (ruling where defendant "cannot show unjustifiable government conduct . . . no hearing is requiring to dispose of the pre-indictment delay issue," notwithstanding the nearly quarter-century interval between the murder and defendant's indictment and attendant deaths and disappearances of potential witnesses) (internal citations omitted). Accordingly, this portion of the R&R is affirmed and adopted.

### H. Concerning Burke's Objections to R&R Sections II.L— Severance of Co-Defendants Charged with Witness Tampering

Burke moves for severance from the witness tampering and attempted witnesses tampering counts of the Indictment (Counts Six and Seven) pursuant to Rule 14(a) of Federal Rules of Civil Procedure (the "Rules"), arguing prejudicial

spillover. Judge Orenstein found that Burke failed to make a showing meriting severance on any grounds. Burke objects citing this Court's recent decision to sever co-defendant Ruggiero from this trial.

Joinder of Burke and D'Arpino is appropriate as a matter of law. FED. R. CRIM. P. 8(b); see also United States v. Rittweger, 524 F. 3d 171, 177 (2d Cir. 2008) (ruling that joinder of defendants is appropriate where the alleged criminal conduct is "unified by some substantial identity of facts or participants, or arise out of a common plan or scheme"); United States v. Turoff, 853 F.2d 1037, 1042 (2d Cir. 1988) (observing that joinder is particularly appropriate where defendants are charged with the same conspiracy and the evidence against them substantially overlaps). Where joinder is thus appropriate, this Circuit has held that some risk of prejudicial spillover is acceptable given the judicial economies that result from joinder. United States v. Carpentier, 689 F.2d 21, 27 (2d Cir. 1982), cert. denied, 459 U.S. 1108 (1983). Moreover, the facts that militated for severance of Ruggiero—that he was not charged in the RICO conspiracy, the three murders or other acts of violence Burke and D'Arpino are charged—are precisely the facts that militate against severance here. Finally, as Judge Orenstein correctly concluded, the cure for the risk of spillover at issue here is a limiting instruction to the jury. See Zafiro v. United States, 506 U.S. 534, 538–39 ("Rule 14(a) does not require severance even if prejudice is shown; rather it leaves the tailoring of the

relief to be granted, if any, to the district court's sound discretion").  Accordingly, this Court affirms and adopts Judge Orenstein's Report and Recommendation.

For all the reasons stated above, this Court affirms and adopts Judge Orenstein's Report and Recommendation

SO ORDERED.


Dated: July 01, 2011            _____/s/_____
Brooklyn, New York                   Sterling Johnson, Jr., Senior, U.S.D.J.