JM:JMR/WK
F.#2009R00579

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

- against - 09 CR 135 (S-5)(SJ)

JOHN BURKE and
DAVID D'ARPINO,

Defendants.

- - - - - - - - - - - - - - - - - -X

MEMORANDUM OF LAW IN SUPPORT OF
MOTIONS IN LIMINE FOR ANONYMOUS, SEQUESTERED
JURY AND TO PRECLUDE REFERENCE TO PRIOR ACQUITTALS

LORETTA E. LYNCH
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

JACQUELYN M. RASULO
EVAN M. NORRIS
WHITMAN G.S. KNAPP
Assistant United States Attorneys
(Of Counsel)

PRELIMINARY STATEMENT

The government respectfully submits this memorandum of law in support of its motions in limine (1) for an anonymous, fully escorted and partially sequestered jury for trial, and (2) to preclude the defense from referencing defendant John Burke's prior acquittals, in New York State Supreme Court, of the murders of Daniel Zahn and Bruce Gotterup.

I. BACKGROUND

A. The Indictment

The defendants John Burke and David D'Arpino, associates in the Gambino organized crime family of La Cosa Nostra ("Gambino crime family"), are charged in a superseding indictment (S-5) with racketeering conspiracy from 1980 to 2010, in violation of 18 U.S.C. § 1962(d). Specifically, the racketeering conspiracy charge (Count One) alleges that Burke and D'Arpino, as Gambino crime family associates, agreed to conduct or participate in the conduct of the Gambino crime family's affairs through a pattern of racketeering activity involving the following racketeering acts:

| # | Racketeering Act | Burke | D'Arpino |
|---|---|---|---|
| 1 | Narcotics Distribution Conspiracy / Narcotics Distribution (1980-2001) | √ | |
| 2 | Conspiracy to Murder / Murder - Daniel Zahn (1982) | √ | |
| 3 | Conspiracy to Murder / Murder - Bruce Gotterup (1991) | √ | |
| 4 | Robbery Conspiracy / Robbery - John Doe #1 (1996) | | √ |

| 5 | Conspiracy to Murder / Murder - John Gebert (1996) | √ | √ |
|---|---|---|---|
| 6 | Robbery Conspiracy / Robbery - Queens Residence (1996-1997) | √ | |
| 7 | Robbery Conspiracy / Robbery - John Doe #2 (2000) | | √ |
| 8 | Witness Tampering Conspiracy / Attempted Witness Tampering - John Doe #3 (2009-2010) | | √ |

In addition, the superseding indictment charges Burke and D'Arpino with the murder of Gebert in-aid-of racketeering, in violation of 18 U.S.C. § 1959(a) (Count Two); the murder of Gebert while engaging in and working in furtherance of a continuing criminal enterprise, in violation of 21 U.S.C. § 848 (Count Three); using, carrying and possessing a firearm between 1980 and 2010 in relation to and in furtherance of the racketeering conspiracy charge, in violation of 18 U.S.C. § 924(c) (Count Four); and causing Gebert's death through the use of a firearm in the course of committing the § 924(c) charge alleged in Count Four, in violation of 18 U.S.C. § 924(j) (Count Five). D'Arpino is also charged with witness tampering conspiracy and attempted witness tampering with respect to John Doe #3 between May 2009 and January 2010 (Counts Six and Seven).[1]

---

[1] Angelo Ruggiero, Jr., a Gambino crime family soldier, is charged as a co-defendant alongside D'Arpino in Counts Six and Seven of the superseding indictment (¶¶ 48-49). Earlier this year, the Court granted Ruggiero's motion for severance and has scheduled a separate trial to begin November 7, 2011.

B. The Gambino Crime Family's History of Obstruction

The Gambino crime family has a long history of jury tampering, particularly in the Eastern District of New York. Notably, in identified instances where jury tampering has taken place, the information necessary to identify, locate and approach jurors was obtained by the Gambino crime family despite the use of an anonymous jury.

In United States v. Gotti, No. 85-CR-178 (EHN) (E.D.N.Y.), eight Gambino crime family co-defendants were tried on racketeering charges involving loansharking, gambling, armed robbery and murder. Even after an anonymous jury was selected, one of the impaneled jurors, George Pape, conspired with members of the Gambino crime family to secure an acquittal. Pape was subsequently convicted for his role in the obstruction of justice in that case. See United States v. Radonich, 1 F.3d 117, 119 (2d Cir. 1993). The FBI has learned from multiple cooperating witnesses with direct knowledge of the incident that persons associated with the Gambino crime family located Pape by tracing the license place number of the car he drove to court.[2]

[2] Former Gambino crime family members and associates have also informed the FBI that the Gambino crime family tampered with the jury in the 1991 trial of John J. Gotti that resulted in his conviction. In that case, United States v. John Gotti, et al., 90-CR-1051 (ILG), the cousin of a juror was paid $100,000 to secure the juror's not guilty vote. After the juror voted guilty and Gotti was convicted, the cousin was killed by the Gambino crime family.

In addition, members and associates of the Gambino crime family attempted to influence jurors during the racketeering and narcotics prosecution of John Carneglia and Gene Gotti, a Gambino crime family soldier and the brother of former bosses John and Peter Gotti, in the 1980s. United States v. Ruggiero, 83-CR-412 (E.D.N.Y.). The defendants' first trial resulted in a mistrial when the government received information that Gambino crime family associate Mel Rosenberg had been tampering with the jury. See United States v. Ruggiero, 678 F. Supp. 46 (E.D.N.Y. 1988) (Constantino, J.). In summary, in December 1987 Rosenberg telephoned an individual whom Rosenberg believed was sitting on the jury, and arranged to meet with that individual in person.[3] (Cooperating witnesses who participated in the crime informed the FBI that Gambino crime family associates who watched the jurors arriving and departing frm the courthouse and thus obtained information regarding the jurors' identities.) At the meeting, Rosenberg told the individual that Rosenberg had been friends with the Gotti family for more than 40 years, and that he knew Gotti's three daughters. Rosenberg then offered the individual a new car if the individual would provide insight as to the jury's inclinations. The individual eventually refused Rosenberg's offer. See id. at 50.

[3] The individual had, in fact, been a juror, but was excused two days before Rosenberg's approach, because it was discovered that the individual was not a United States citizen.

In rejecting the defendants' claim that a retrial was barred by double jeopardy principles, the Second Circuit held that "the evidence did raise a 'distinct possibility' that the defendants had identified several anonymous jurors and had tried to influence one or more of them." United States v. Ruggiero, 846 F.2d 117, 123 (2d Cir. 1988).

During Carneglia and Gotti's retrial, Gambino crime family soldier Carmine Agnello offered $25,000 to a juror to vote for an acquittal. See United States v. Ruggiero, 928 F.2d 1289, 1290-91 (2d Cir. 1991). Once again, the FBI learned from cooperating witnesses who took part in the crime that identifying information concerning the juror was obtained by Gambino crime family associates conducting surveillance of the jurors arriving and departing from the courthouse. Fortunately, the tainted juror was removed from the jury during deliberations, after he claimed that he had been threatened. Subsequently, in May 1989, the jury returned a verdict of guilty and John Carneglia and Gene Gotti were sentenced to prison. See generally id.

In 2003, long-time Gambino captain Anthony Ciccone and Gambino soldier Primo Cassarino were involved in a witness tampering scheme charge in United States v. Gotti, No. 02-CR-606 (FB) (E.D.N.Y.), a racketeering trial in which Peter Gotti was a defendant. The evidence in that case showed that Anthony Frazetta, the stepson of Richard Bondi, a co-defendant and

Gambino associate, was subpoenaed to testify before the grand jury as part of the investigation that gave rise to the indictment in that case. During intercepted conversations, Ciccone and Cassarino discussed the matter, and Cassarino subsequently conveyed Ciccone's order that Frazetta must "take[] the fifth" and refuse to testify because answering even one question would open a "Pandora's box" for Ciccone and his crew. Thereafter, Frazetta asserted his Fifth Amendment rights and did not testify before the grand jury. At trial, both Ciccone and Cassarino were convicted of witness tampering.[4]

Further, during the prosecution of United States v. Ambrosio, No. 03-CR-425 (JS) (E.D.N.Y.), Michael Guerrieri, a Gambino soldier, tampered with a loanshark victim. Guerrieri and his associate, John Ambrosio, were charged with a racketeering conspiracy count alleging the collection of unlawful debt in addition to substantive loansharking counts. Two weeks prior to

[4] In the same case, extortion victim Francis Molfetta testified before a grand jury that Ciccone had used extortionate means to collect money from Molfetta. After testifying in the grand jury, and before trial, Edward Panzer, Esq. was retained to represent Molfetta. Panzer was an office mate of George Santangelo, Ciccone's defense lawyer. At trial, Molfetta recanted his grand jury testimony. Molfetta was subsequently charged with perjury and pled guilty. See United States v. Molfetta, No. 04-CR-453 (JBW) (E.D.N.Y.). In explaining the reason for his perjury at the Gotti trial, Molfetta said that after he testified truthfully in the grand jury and admitted that members of the Gambino crime family had extorted money from him, he received phone calls from individuals he believed were criminal associates of the defendants and was in fear for his life and the safety of his family.

trial, a victim-witness fled the country after being visited by Guerrieri at the witness's place of business. Guerrieri instructed the victim that, should he be called to testify at Guerrieri's trial, he should state that the loan was from a different individual. The witness told Guerrieri that he understood, and subsequently left the country until the case against the defendants was resolved.

C. Defendant D'Arpino and Ruggiero's Interference with the Judicial Process

In addition to the longstanding Gambino crime family history of interfering with the judicial process, defendants D'Arpino and Ruggiero are charged in this case with witness tampering conspiracy and attempted witness tampering (Counts Six and Seven/Racketeering Act Eight).

The government expects to present evidence at trial to prove that defendant D'Arpino, along with co-conspirators James Cadicamo and Angelo Ruggiero, engaged in recent witness tampering by threatening the life of John Doe #3. D'Arpino, Cadicamo and Ruggiero expected John Doe #3 to provide critical testimony against Cadicamo at the trial of charges alleged in an underlying indictment (S-3) in this case.[5] The charges against Cadicamo in

[5] Cadicamo, a Gambino crime family associate, pleaded guilty before this Court, on May 17, 2010, to racketeering and racketeering conspiracy charges (allocuting to predicate acts of marijuana distribution conspiracy/marijuana distribution and robbery conspiracy/robbery).

that indictment included witness tampering conspiracy arising from Cadicamo's enlistment of John Doe #3, the victim of the witness tampering charged in this indictment, to use violence to prevent a witness from providing information to law enforcement agents and testifying against Cadicamo before a federal grand jury sitting in the Middle District of Florida.

## ARGUMENT

### I. An Anonymous, Partially Sequestered Jury Is Appropriate

#### A. Anonymity Is a Well-Established Means of Ensuring the Impartiality of a Jury

The Second Circuit has long recognized that anonymous juries are often necessary to protect the integrity of trials and ensure an impartial jury. See, e.g., United States v. Amuso, 21 F.3d 1251, 1264-65 (2d Cir. 1994); United States v. Locascio, 6 F.3d 924, 946-47 (2d Cir. 1993); United States v. Persico, 832 F.2d 705, 717-18 (2d Cir. 1987). This is so because jurors whose identities are known are vulnerable to pressure and influence by criminal defendants and their associates. Furthermore, even if no one improperly approaches a juror, the fact that the jurors are aware that their identities are publicly known may subtly and unconsciously impair their impartiality – especially in cases, such as this, where defendants are charged with violent crimes on behalf of an ongoing criminal organization.

Accordingly, the Second Circuit has adopted a two-step process for determining whether to empanel an anonymous jury. A

district court should first determine whether there is strong reason to believe that the jury needs protection. If there is, the court should then take reasonable precautions to minimize any prejudice that might arise from an anonymous jury. See, e.g., United States v. Thai, 29 F.3d 785, 801 (2d Cir. 1994); United States v. Paccione, 949 F.2d 1183, 1192 (2d Cir. 1991); United States v. Barnes, 604 F.2d 121, 140-41 (2d Cir. 1979). Within those general parameters, the decision to utilize an anonymous jury is left to the sound discretion of the trial court, see, e.g., United States v. Wong, 40 F.3d 1347, 1376 (2d Cir. 1994); Paccione, 949 F.2d at 1192; United States v. Maldonado-Rivera, 922 F.2d 934, 971 (2d Cir. 1990), and the court may base its decision on the government's pretrial proffer. See Wong, 40 F.3d at 1376-77.

Five factors are relevant to determining the propriety of empaneling an anonymous jury: (1) the seriousness of the charges; (2) the dangerousness of the defendant; (3) the defendant's ability to interfere with the jury, either by himself or through a criminal organization of which he is a member; (4) previous attempts to interfere with the judicial process by the defendant or his associates; and (5) the amount of public and media attention expected during the trial that might expose the jurors to extraordinary pressures that might impair their ability to be fair. See Thai, 29 F.3d at 801; Paccione, 949 F.2d at

1192-93 (noting that publicity increases the risk of "inappropriate contacts that would compromise the trial"); United States v. Vario, 943 F.2d 236, 240 (2d Cir. 1991); United States v. Tutino, 883 F.2d 1125, 1132-33 (2d Cir. 1989); Persico, 832 F.2d at 717.

Applying these five factors, the Second Circuit repeatedly has approved the use of anonymous juries in cases involving defendants with ties to organized crime. See, e.g., United States v. Peter Gotti, 459 F.3d 296, 345-46 (2d Cir. 2006); Amuso, 21 F.3d at 1264-65; Locascio, 6 F.3d at 946-47; Vario, 943 F.2d at 240; Persico, 832 F.2d at 717. Although the mere fact that a case involves organized crime does not justify use of an anonymous jury, such a justification exists where there is a "demonstrable history or likelihood of obstruction of justice on the part of the defendant or others acting on his behalf or a showing that trial evidence will depict a pattern of violence by the defendant and his associates such as would cause a juror to reasonably fear for his own safety." Vario, 943 F.2d at 241.

Courts in this district regularly empanel anonymous juries in organized crime cases. See, e.g., United States v. Gioeli, et al., No. 08-CR-240 (BMC) (E.D.N.Y. July 28, 2011); United States v. Gammarano, No. 06-CR-0072 (CPS), 2007 WL 2077735 (E.D.N.Y. July 18, 2007); United States v. Persico, No. 04-CR-911

(SJ), 2006 WL 1794773 (E.D.N.Y. June 9, 2006); United States v. Urso, 03-CR-1382 (NGG), 2006 WL 1210886 (E.D.N.Y. May 2, 2006); United States v. Basciano, No. 03-CR-929 (NGG), 2005 U.S. Dist. LEXIS 42236 (E.D.N.Y. Nov. 17, 2005); United States v. Locascio, 357 F. Supp. 2d 558 (E.D.N.Y. 2005) (Amon, J.); United States v. Cacace, 321 F. Supp. 2d 532 (E.D.N.Y. 2004) (Johnson, J.); United States v. Bellomo, 263 F. Supp. 2d 557 (E.D.N.Y. 2003) (Glasser, J.); United States v. Carbonaro, 03-CR-566 (ARR) (E.D.N.Y. 2003); United States v. Gigante, 982 F. Supp. 140, 150-51, aff'd, 166 F.3d 75 (2d Cir. 1999); United States v. Malpeso, 93-CR-1365 (RJD) (E.D.N.Y. 1993).

B. There Is Strong Reason to Believe that the Jury Needs Protection in this Case

Applying the standards set forth above, it is clear that the interests of justice would best be served in this case by protecting the identity of the jurors. First, the charges are exceptionally serious, as both defendants are charged among other things with racketeering- and murder-related crimes and face the possibility of life imprisonment. The gravity of a defendants' situation "create[s] significant incentives to threaten jurors." United States v. Gotti, No. 02-CR-743 (RCC), 2004 WL 2274712, *2 (S.D.N.Y. Oct. 7, 2004) (empaneling anonymous jury).

Second, the defendants are dangerous. Burke and D'Arpino are charged with participating in the affairs of the Gambino crime family through a pattern of racketeering activity

which includes murders, narcotics trafficking, robberies, the use of firearms and witness tampering. Accordingly, the jurors will be exposed to "trial evidence [that] will depict a pattern of violence by the defendants and their associates such as would cause a juror to reasonably fear for his own safety." Vario, 943 F.2d at 241.

Third, the witness tampering charges in this case, which relate to actions D'Arpino and his co-conspirators took to prevent John Doe #3 from testifying against their fellow Gambino crime family associate James Cadicamo, indicate the existence of a substantial potential threat of corruption of the judicial process. D'Arpino, and also Burke, have the ability through their ties to the Gambino crime family, to tamper with the jury empaneled in this case. As previously discussed, the members and associates of the Gambino crime family have a long-standing history of obstructive conduct in furtherance of the preservation of their joint criminal enterprise; here, defendant D'Arpino is charged with a recent instance of just such conduct.

C. The Use of an Anonymous and Partially Sequestered Jury Will Not Deprive the Defendants of the Opportunity for Meaningful Participation in Jury Selection or Diminish His Presumption of Innocence

Once a district court determines that there is strong reason to believe that a jury needs protection, it may empanel an anonymous jury provided that it takes reasonable precautions to minimize any potential prejudice therefrom. See Thai, 29 F.3d at

801; Amuso, 21 F.3d at 1264-65; Paccione, 949 F.2d at 1192; Vario, 943 F.2d at 239; Tutino, 883 F.2d at 1132; Persico, 832 F.2d at 717-18; United States v. Thomas, 757 F.2d 1359, 1365 (2d Cir. 1985). A defendant has two legitimate concerns that are potentially affected by a decision to empanel an anonymous jury: (1) the right to make informed choices during the jury selection process and (2) the right to be tried by jurors who are not prejudiced by reason of their anonymity. As explained below, both of these concerns easily can be addressed.

1. Empaneling an Anonymous Jury Does Not Burden the Defendant's Ability to Make Informed Choices During Jury Selection

Although a defendant has the right to a meaningful voir dire of potential jurors, see Rosales-Lopez v. United States, 451 U.S. 182, 188 (1981), the decision as to the questions to be asked in voir dire largely rests within the informed discretion of the trial court. See United States v. Silva, 715 F.2d 43, 50 (2d Cir. 1983) (absent a clear abuse of discretion, trial court's ruling on questions to be asked will not be disturbed); Barnes, 604 F.2d at 137-40 ("As long as a defendant's substantial rights are protected by a voir dire designed to uncover bias as to issues in the cases and as to the defendant himself, then reasonable limitations on the questioning should not be disturbed on appeal."). Indeed, as Judge Glasser has noted, "[t]he jury selection process (voir dire) is not a matter of constitutional

dimension and the selection of an anonymous jury was implicitly held to be constitutional in Barnes." United States v. Gotti, 777 F. Supp. 224, 227 (E.D.N.Y. 1991) (citation omitted).

The information that will be kept from the parties and counsel if this motion is granted is not meaningful to the jury selection process. Names, exact addresses and places of employment of the prospective jurors are not necessary to making an informed choice. Information regarding the general neighborhoods in which the prospective jurors live and the general nature of their work is sufficient. The names of prospective jurors, to the extent they provide information about ethnicity, are not relevant to meaningful voir dire. See Georgia v. McCollum, 505 U.S. 42 (1992) (prohibiting use of peremptory challenges in racially discriminatory manner by criminal defendants). The common practice in this district of extensive voir dire, including the use of questionnaires and jury instructions, further acts to safeguard the rights of the defendants.

2. The Court Can Explain the Reasons for Anonymity and Partial Sequestration to Prospective Jurors in Neutral Terms that Will Diminish the Risk of Prejudice to the Defendants

Numerous courts have recognized that where anonymity is necessary, jurors can receive an instruction from the court explaining the measures imposed in a neutral way in order to prevent the jury from drawing any negative inference. Although

the Due Process Clause of the Fifth Amendment protects the presumption of innocence, "there is no per se rule that it may not be burdened." Thomas, 757 F.2d at 1364; see also United States v. Scarfo, 850 F.2d 1015, 1026 (3d Cir. 1988). Here, the burden is slight compared to the Court's interest in safeguarding the integrity of the judicial process and can be alleviated through a proper jury instruction.

Most commonly, courts have explained to jurors that their privacy and their identities require protection from the media and the public. See, e.g., Thai, 29 F.3d at 801; Amuso, 21 F.3d at 1265; Tutino, 883 F.2d at 1133. In some cases, the court has explained the jury's partial anonymity by telling prospective jurors that anonymity would allow them to feel more comfortable in giving candid answers to the personal questions asked in voir dire and in the jury questionnaires. In the well-known Crown Heights case, Judge Trager explained the jurors' anonymity by telling prospective jurors that their names, addresses and places of employment would be kept confidential "in order to protect your privacy from press inquiries and others not connected with the case." Either of those examples would provide a credible explanation to prospective jurors in this case.

As for partial sequestration, if ordered by the Court, the government proposes that the jury be told that transportation is being provided to protect their privacy and to ensure that the

trial can proceed expeditiously. This explanation has been routinely given in cases where transportation to and from court is provided. See, e.g., United States v. Nelson, No. 94-CR-823 (DGT) (E.D.N.Y.); United States v. Orena, No. 93-CR-1366 (ERK) (E.D.N.Y.); United States v. Malpeso, No. 93-CR-1365 (RJD) (E.D.N.Y.); United States v. Cutolo, No. 93-CR-1230 (EHN) (E.D.N.Y.).

## II. The Court Should Preclude Reference to Defendant Burke's Prior Acquittals

Defendant Burke was charged in 1982, in New York State Supreme Court, Queens County, with the murder of Daniel Zahn. See People v. John Burke, Docket No. 4115/82. Burke went to trial in that case in 1983 and was acquitted. In addition, in 2001, Burke was charged with the murders of Bruce Gotterup and John Gebert. See People v. John Burke, Docket No. 1371/01 (New York State Supreme Court, Queens County). Burke went to trial in that case in 2002; he was convicted of the murder of Bruce Gotterup and acquitted of the murder of John Gebert. The government requests that defense counsel be precluded from making reference to Burke's prior acquittals. They are irrelevant under Rule 401, risk jury confusion, and constitute inadmissible hearsay.[6]

[6] The government does not intend to introduce evidence of Burke's 2002 conviction of the murder of Bruce Gotterup.

It is well-settled that a prior acquittal is not relevant at trial. See, e.g., United States v. Viserto, 596 F.2d 531, 537 (2d Cir. 1979) ("A judgment of acquittal is relevant only to the legal question of whether the prosecution is barred by the constitutional doctrine of double jeopardy and collateral estoppel."); accord United States v. Kerley, 643 F.2d 299, 300 (5th Cir. 1981) ("We agree with the Government's position that evidence of a prior acquittal is not relevant because it does not prove innocence but rather merely indicates that the prior prosecution failed to meet its burden of proving beyond a reasonable doubt at least one element of the crime."). The prior acquittal also merits exclusion because it is hearsay, and because of "the danger it would present for confusion of the issues and misleading the jury." United States v. Gambino, 818 F. Supp. 536, 539 (E.D.N.Y. 1993) (Glasser, J.).

CONCLUSION

For the reasons set forth above, the government's motions should be granted.

Dated: Brooklyn, New York
August 11, 2011

Respectfully submitted,

LORETTA E. LYNCH
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

JACQUELYN M. RASULO
EVAN M. NORRIS
WHITMAN G.S. KNAPP

Assistant United States Attorneys
(Of Counsel)