

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

TM:EMN/JMK/WK
F.#2009R00579

*271 Cadman Plaza East*
*Brooklyn, New York  11201*

March 12, 2012

By ECF and Hand

The Honorable Sterling Johnson, Jr.
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

       Re:  United States v. John Burke
            Criminal Docket No. 09-135 (S-5) (SJ)

Dear Judge Johnson:

       The government respectfully submits this reply to the defendant John Burke's opposition to the government's August 5, 2011 motion in limine to admit evidence of the defendant's uncharged criminal acts.  For the additional reasons set forth below, the government respectfully submits that its motion should be granted in its entirety.

Background

       The defendant, a long-time associate in the Gambino organized crime family of La Cosa Nostra (the "Gambino crime family"), is charged in the above-captioned superseding indictment with participating in five racketeering acts as part of Count One's racketeering conspiracy, as follows:

- narcotics distribution conspiracy and narcotics distribution, relating to the defendant's cocaine and marijuana trafficking activities, from 1980 to 2001 (Racketeering Act One);

- conspiracy to murder and murder, relating to the defendant's participation in the drug-related shooting deaths of Daniel Zahn, Bruce Gotterup and John Gebert in 1982, 1991 and 1996, respectively (Racketeering Acts Two, Three and Five); and

- robbery conspiracy and attempted robbery, relating to the defendant's involvement in the attempted home-invasion robbery of a Queens residence in 1996 or 1997 (Racketeering Act Six).

The defendant is also charged with Gebert's murder in Counts Two and Three in connection with two other enterprise-related crimes: murder in-aid-of racketeering (which concerns the same enterprise alleged in Count One) and murder while engaging in or working in furtherance of a continuing criminal enterprise. Finally, the defendant is charged in Counts Four and Five with two weapons offenses: violating 18 U.S.C. §§ 924(c) (in connection with the racketeering conspiracy charged in Count One) and 924(j) (in connection with Gebert's murder).

As set forth in the motion in limine, the government seeks to introduce evidence of the defendant's participation in a number of other crimes, including robberies, assaults, firearms possession, narcotics use, murder, solicitation to murder, credit card theft, fraud, extortion and loansharking. (See Docket Entry No. 230 (hereinafter, "Gov't Mot.") at 4-13). As set forth in the motion, the evidence of the defendant's participation in these crimes constitutes direct proof of the charged crimes and/or evidence admissible pursuant to Rule 404(b) of the Federal Rules of Evidence. (Gov't Mot. at 13-27).

## Analysis

In his opposition to the government's motion, the defendant contends variously that the additional criminal acts the government seeks to introduce are not sufficiently related to the Gambino crime family and thus not admissible as direct evidence of the charged crimes, and/or are not admissible pursuant to Rule 404(b). The defendant also argues that the evidence of the uncharged acts, even if otherwise admissible, is too prejudicial to be admitted pursuant to Rule 403.

With respect to Rule 403, the government emphasizes at the outset that the defendant's argument that permitting the government to introduce evidence of the uncharged acts "would only result in making an already lengthy trial exhaustive" (Def. Br. at 9) is meritless and should be summarily rejected. The proffered evidence will add no more than an hour or two, spread out over approximately half a dozen witnesses, to a multi-week trial. As is shown below, the defendant's other arguments against admissibility also fail.

I.   Grounds for Admissibility

Below, the government addresses the defendant's arguments with respect to the admissibility of evidence of many of the uncharged acts set forth in the motion in limine. For ease of analysis, the government does not address each such act and relies on its moving brief for additional grounds for admissibility as to those acts.

   A.   Direct Evidence

At trial, the government seeks to offer evidence of the defendant's involvement in other uncharged crimes in order to establish the existence of the enterprise, i.e., the Gambino crime family (charged in Counts One and Two) and the continuing criminal enterprise (charged in Count Three); the Gambino crime family's involvement in racketeering activity; the defendant's rank and position within the Gambino crime family and the continuing criminal enterprise; the Gambino crime family's effect on interstate commerce; and the history and relationships between the defendant and cooperating witnesses. Evidence of the defendant's involvement in other crimes is admissible to "complete the story of the charged crimes, demonstrate relationships of trust and corroborate the testimony of cooperating witnesses." United States v. Basciano, 2006 WL 385325, at *10 (E.D.N.Y. Feb. 17, 2006) (NGG).

As to six of the nine robberies at issue, the government seeks to admit evidence of those robberies – all of drug dealers – through CW-1, CW-2 and CW-3 and CW-4, former Gambino crime family associates who were close criminal associates of the defendant at various times. (See Mot. at 4-7 (Robberies 1, 2, 3, 4, 5 and 7)). All six robberies should be admitted as direct evidence of the defendant's participation in the racketeering conspiracy, which the government will prove was characterized by his decades-long involvement in dealing drugs with other Gambino crime family associates and under the protection of the Gambino crime family, including CW-2's father, a powerful soldier, and in committing robberies and murders that in nearly every case related directly to those drug dealing activities.[1]

---

[1] The defendant's solicitation of CW-1 to murder John Brancaccio, another drug dealer, so that the defendant could obtain control over Brancaccio's share of their joint drug business (Gov't Mot. at 13), is similarly relevant to the racketeering conspiracy, both racketeering enterprises and the continuing criminal enterprise.

It is thus part of the government's proof of the racketeering conspiracy and the racketeering and continuing criminal enterprises (charged in Counts One, Two and Three) that the defendant's criminal associates be permitted to testify about his involvement in these uncharged robberies to prove "the existence and nature of the enterprise and the conspiracy." United States v. Miller, 116 F.3d 641, 682 (2d Cir. 1997), cert. denied, 118 S. Ct. 2063 (1998); United States v. Thai, 29 F.3d 785, 812 (2d Cir. 1994) ("When the indictment contains a conspiracy charge, uncharged acts may be admissible as direct evidence of the conspiracy itself."), cert. denied, 115 S. Ct. 456 (1994); United States v. Wong, 40 F.3d 1347, 1378 (2d Cir. 1994) ("[T]his evidence [of an uncharged shooting] was probative of the existence, organization, and nature of the RICO enterprise, a central allegation in the indictment. Accordingly, 'the fact that it may also have been probative of a separate uncharged crime is irrelevant.'" Id. at 1378 (citation omitted), cert. denied, 116 S. Ct. 190 (1995).[2]

Two of the other robberies (Robberies 6 and 8), committed with and at the direction of, respectively, CW-3 and CW-4 – two of the defendant's coconspirators in the Gebert murder - are similarly "relevant to the central issues of the trial: the existence of the racketeering enterprise and the conspiracy," under the same set of Second Circuit precedents. United States v. Baez, 349 F.3d 90, 93-94 (2d Cir. 2003) (upholding district court's admission of 16 uncharged robberies in trial against defendant for racketeering conspiracy, murder in-aid-of racketeering and other charges; observing that "[i]t is well settled that in prosecutions for racketeering offenses, the government may introduce evidence of uncharged offenses to establish the existence of the criminal enterprise").

Evidence of the defendant's involvement in assaults is similarly admissible. Four of the assaults (see Gov't Mot. at 9-10 (Assaults 1, 3, 4 and 5)) were committed alongside other Gambino crime family associates and/or at the direction of other Gambino crime family associates. Evidence of the first assault - really a set of assaults the defendant committed with CW-1 in connection with their drug dealing activities - is admissible for the same reasons that the evidence of the above-mentioned

---

[2] The Second Circuit has expressly approved the admission of uncharged act evidence in the context of a Section 1959 prosecution to prove the existence of the enterprise. See, e.g., United States v. Mejia, 545 F.3d 179, 206 (2d Cir. 2008).

robberies of drug dealers is admissible. The defendant argues that one of the assaults - committed by the defendant and CW-7 (Assault 3) - is not sufficiently related to the Gambino crime family. (Def. Br. at 7). The government will prove that the defendant committed the assault with CW-7, a Gambino crime family associate who worked as an enforcer for the defendant in his drug operation, and a third individual. Evidence of that assault, as well as the other drug-related assault (Assault 5), is thus admissible as direct proof of the racketeering conspiracy and the racketeering and continuing criminal enterprises.

Evidence of the defendant's murder of John Doe is admissible under the same line of precedents because it is "inextricably intertwined" with the government's evidence of the defendant's murder of Daniel Zahn, alleged in Racketeering Act Two. As noted in the motion in limine, after the defendant was shot on separate occasions in the early 1980s - once by Zahn, once by Doe - he retaliated by killing both men, bragging to CW-2 about what he had done in the same admission. (Gov't Mot. at 12 and 20 n.6). See United States v. Carboni, 204 F.3d 39, 44 (2d Cir. 2000) ("'[E]vidence of uncharged criminal activity is not considered other crimes evidence under Rule 404(b) . . . if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial.'") (quoting United States v. Gonzalez, 110 F.3d 936, 942 (2d Cir. 1997)). The defendant does not dispute the basis for admitting evidence of the Doe murder, arguing only that its admission will be prejudicial (which argument the government addresses below).

The defendant tacitly acknowledges the force of these precedents, arguing for the most part not that they are inapplicable but that "[t]he Supreme Court, so far as research discloses, has never addressed the Second Circuit's expansive view of the admissibility of 'enterprise' proof," and maintaining that the admission of the uncharged acts would violate his rights. (Def. Br. at 11). The fact remains that the law of this Circuit has been clear for over two decades, and, as indicated in the citations above, the Supreme Court has not taken up repeated opportunities to alter it.

The defendant's other principal argument is that the cooperating witnesses were simply "his friends[,] . . . that these individuals grew up together and hung out in the Howard Beach area," and that crimes committed among the defendant and his friends do not necessarily constitute crimes of the enterprise because the government has "designat[ed]" his friends mafia associates. (Def. Br. at 6). The argument is meritless.

The government has proffered, and will prove at trial, that each of these cooperating witnesses was a Gambino crime family associate and, over the course of over two decades, in furtherance of their joint criminal undertaking, committed numerous crimes with the defendant, including the uncharged robberies. As the superseding indictment makes clear:

> The principal purpose of the Gambino crime family was to <u>generate money</u> for its members and associates. This purpose was implemented by members and associates of the Gambino crime family through various criminal activities, including <u>drug trafficking</u>, <u>robbery</u>, extortion, illegal gambling and loansharking. The members and associates of the Gambino crime family also furthered the enterprise's criminal activities by threatening economic injury and using and threatening to use <u>physical violence, including murder</u>.

Superseding Indictment ¶ 8 (emphasis added).[3] Such evidence thus constitutes direct evidence of the racketeering conspiracy and enterprise and, in many cases, the related continuing criminal enterprise as well.[4] That is, evidence of each of the uncharged acts is admissible to prove the existence of one or both enterprises, the Gambino crime family's involvement in racketeering activity and its impact on commerce. The evidence

---

[3] Evidence of certain of the other uncharged acts, including credit card theft, fraud, loansharking and extortion (Gov't Mot. at 12-13), variously committed alongside other Gambino crime family associates and for the benefit of Gambino crime family members, are also admissible as direct evidence of the racketeering conspiracy and enterprise.

[4] The uncharged acts that involve firearms - <u>e.g.</u>, several of the robberies, one of the assaults and the murder of John Doe - are all directly relevant to Count Four, which charges the defendant with possessing, brandishing and discharging firearms in violation of 18 U.S.C. § 924(c). The same acts are also direct evidence of the racketeering and continuing criminal enterprise charges. <u>Cf.</u> <u>United States v. Becerra</u>, 97 F.3d 669, 671 (2d Cir. 1996) (observing that the Second Circuit has "repeatedly approved the admission of firearms as evidence of narcotics conspiracies, because drug dealers commonly keep firearms on their premises as tools of the trade").

is likewise admissible to prove the defendant's history in the enterprises and the development of relationships of trust between him and his coconspirators, including cooperating witnesses. The evidence is also admissible to corroborate cooperating witness testimony.

    B.    Rule 404(b)

    Evidence of the robberies, assaults and many of the other uncharged acts is also admissible pursuant to Rule 404(b) of the Federal Rules of Evidence. The crimes the defendant committed with the cooperating witnesses – all of whom at the time were his coconspirators in the racketeering conspiracy – are clearly admissible background to explain the development of the defendant's criminal associations over time. See United States v. Pipola, 83 F.3d 556, 565-66 (2d Cir. 1996) ("One legitimate purpose for presenting evidence of extrinsic acts is to explain how a criminal relationship developed; this sort of proof furnishes admissible background information in a conspiracy case."); United States v. Pascarella, 84 F.3d 61, 72-73 (2d Cir. 1996) (noting that the Second Circuit has "repeatedly held [that] . . . it is within the court's discretion to admit evidence of prior bad acts to . . . explain how the illegal relationship between participants in the crime developed, or to explain the mutual trust that existed between co-conspirators"); United States v. Gadsden, 300 Fed. App'x. 108, 110 (2d Cir. 2008) ("[T]he district court did not abuse its discretion by allowing testimony about past violent acts, such as Gadsden assisting a fellow dealer in the beating of a prospective customer, because such evidence helps 'to explain the mutual trust that existed between coconspirators.'") (quoting Pascarella).

    In addition, evidence of the defendant's involvement in all the uncharged acts is relevant to prove the defendant's knowledge and intent throughout his participation in the racketeering crimes charged in the superseding indictment. (See also Gov't Mot. at 26). Tellingly, the defendant argues in response not that the evidence of the robberies and other uncharged acts is inadmissible under Rule 404(b), but rather that it is "cumulative," "highly prejudicial" and "inflammatory" (Def. Br. 9) – arguments that only address Rule 403 (which the government addresses below). As a Rule 404(b) matter, in light of the "inclusionary approach" the Second Circuit counsels, see Mejia, 545 F.3d at 203, the government has proffered ample bases for the Court to conclude that the evidence of these uncharged acts is not being offered to prove the defendant's bad character or criminal propensity, but rather to prove his knowledge and intent, to establish critical background, and to explain the relationship of trust among his coconspirators.

8

\* \* \* \*

The evidence the government seeks to admit is not only properly admitted at trial, but its exclusion would be misleading and highly confusing to the jury. As it has long made clear, the government intends to prove much of its case through the testimony of multiple cooperating witnesses, all of whom were former criminal associates of the defendant in the Gambino crime family. These witnesses cannot testify concerning their years-long relationships with the defendant without discussing the criminal enterprise in which they existed and thrived together. Any truthful and complete testimony about their own and the defendant's participation in the Gambino crime family will necessarily encompass criminal activity engaged in with the defendant. To strip away from their testimony all criminal acts not set forth as predicate acts in the superseding indictment would leave these critical witnesses without the capacity to explain how they came to know the defendant, how their participation with him in the charged crimes began and developed, and how the defendant came to trust them enough to participate with them in – or confess to them his own participation in – many of the racketeering acts included in Count One, including the murders.

Further, for the government to fulfill its Giglio obligations, these witnesses must relate their own criminal histories. In many instances, that will mean testifying about the crimes they committed with the defendant. Excising the defendant from those histories in the manner the defendant urges (Def. Br. at 12) would require the introduction of false, misleading and confusing testimony. See United States v. Guerrero, --- F. Supp. 2d ---, 2011 WL 6013957, at *25 (S.D.N.Y. Dec. 1, 2011) ("[S]ome of the evidence to which Guerrero objects was properly admitted because several of the Government's witnesses at trial participated in these acts. Accordingly, the Government was required to appraise the defendant of these acts, and the Government was permitted to elicit the witnesses' testimony about the acts 'to avoid the appearance that it [is] concealing impeachment evidence from the jury.'") (citations omitted).

II. Rule 403 Balancing

The uncharged acts set forth in the government's motion are admissible under Rule 403 of the Federal Rules of Evidence because their probative value is not "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed.

9

R. Evid. 403. The defendant argues that the "proffered evidence is highly prejudicial, and inflammatory in proportions far outweighing its probative value." (Def. Br. at 10). The defendant's argument is meritless.

To begin, given the three murders the defendant is alleged to have committed as predicate acts, the danger of unfair prejudice arising from additional evidence of the defendant's commission of other, lesser crimes is negligible. See Guerrero, 2011 WL 6013957 at *26 ("The crimes to which the [uncharged act] evidence related [i.e., an attempted murder, a shooting and multiple robberies] were less sensational than the September 3, 1994 murders, reducing any danger that the admission of this evidence would inflame the jury."); see also United States v. Roldan-Zapata, 916 F.2d 795, 804 (2d Cir. 1990) (in narcotics case, affirming admission of cooperating witness testimony of prior narcotics transactions with the defendant where the prior transactions "did not involve conduct any more sensational or disturbing than the crimes with which [the defendant] was charged") (citation and quotation marks omitted). While the government does seek to admit brief testimony from CW-2 regarding the defendant's commission of a fourth, uncharged murder to give context to an admission, the evidence will be far less "sensational or disturbing" than the evidence of the Zahn, Gotterup and Gebert murders, as to which the government will adduce evidence from multiple witnesses and introduce photographic and other evidence.

Nor are the acts likely to confuse or mislead the jury, as the defendant is charged with only five distinct racketeering acts, three of which involve murders. With respect to the uncharged murder of Doe, its admission is not likely to confuse or mislead: the victim is unknown, and the testimony concerning the murder, unlike that of the Zahn, Gotterup and Gebert murders, will be brief. With respect to the robberies, the facts of the home invasion robbery alleged in Racketeering Act Six are sufficiently unique – the victims were not drug dealers, and the defendant's accomplices are different - such that any danger of confusion is remote.

Nor will the evidence occasion undue delay or waste of time. The evidence will all come from cooperating witnesses that the government will be calling to testify in any event about the defendant's participation in the five predicate acts set forth in Count One's racketeering conspiracy and the other charges in the superseding indictment. Without exception, the evidence of the uncharged acts will take the form of a small number of additional, focused questions in the witnesses' direct examinations. The suggestion that the defendant will be

prejudiced because "the sheer volume of evidence and trial time devoted to proving the uncharged crimes [may] exceed[] the amount of time spent on evidence of the charged crime" is simply wrong. (Def. Br. at 10). In a multi-week trial, the additional testimony the government seeks to adduce will add no more than an hour or two to the trial, spread out over half a dozen or more witnesses.

Finally, if the Court were to conclude that there exists a danger of undue prejudice, any such risk could be mitigated effectively by an instruction limiting the jury's consideration of the evidence to the purposes for which it is offered, upon a request by the defendant. See, e.g., United States v. Mickens, 926 F.2d 1323, 1328-29 (2d Cir. 1991); United States v. Levy, 731 F.2d 997, 1002 (2d Cir. 1984). The defendant doubts the efficacy of such instructions, citing a wholly inapposite case reversing a trial court's failure to sever a felon-in-possession count from a bank robbery count, which meant the jury hearing the bank robbery evidence learned that the defendant had a prior conviction. (Def. Br. at 12 (citing United States v. Jones, 16 F.3d 487, 492-93 (2d Cir. 1994)). Where, as here, the defendant is charged with three murders as predicate acts, and the uncharged act evidence is less inflammatory than the evidence of those murders, there is no reason to doubt the effectiveness of a limiting instruction to mitigate any prejudice.

## Conclusion

For these reasons, as well as those set forth in the government's August 5, 2011 motion, the government respectfully submits that its motion in limine to admit certain evidence of the defendant's uncharged criminal acts should be granted.

Respectfully submitted,

LORETTA E. LYNCH
United States Attorney

By:  /s/
Jacquelyn M. Kasulis
Evan M. Norris
Whitman G.S. Knapp
Assistant U.S. Attorneys
(718) 254-6103/6376/6107

cc: Counsel of Record (by ECF)
    Clerk of Court (SJ) (by ECF)