UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------X
UNITED STATES OF AMERICA,

                                       09 CR 135 (SJ)

           v.

                                       <u>MEMORANDUM</u>
                                         <u>AND ORDER</u>

JOHN A. BURKE,

                Defendant.
--------------------------------------------------X

A P P E A R A N C E S:

UNITED STATES ATTORNEY
Loretta E. Lynch
271 Cadman Plaza East
Brooklyn, NY 11201
By:    Jacquelyn Kasulis
       Evan Norris
Attorneys for the Government

HOWARD JACOBS
401 Broadway, Suite 1902
New York, NY 10003
By:    Howard L. Jacobs
Attorney for Defendant

LAW OFFICES OF RICHARD JASPER
276 Fifth Avenue, Suite 501
New York, NY 10001
By:    Richard Jasper
Attorney for Defendant

LAW OFFICE OF YING STAFFORD
276 Fifth Avenue, Suite 501
New York, NY 10001
By:     Ying Stafford
Attorney for Defendant

**JOHNSON, Senior District Judge:**

John Burke, an alleged associate of the Gambino crime family ("Defendant"
or "Burke") has been charged with racketeering conspiracy (including conspiracies
to murder, commit robbery, and distribute narcotics) as well as murder in aid of
racketeering, murder in furtherance of continuing a criminal enterprise, and two
related firearms counts.   The government moves the Court to empanel an
anonymous, partially-sequestered jury.[1]   Based on the submissions of the parties,
the March 22, 2012 oral argument, and for the reasons stated below, the
government's motion is granted.

As stated in the indictment, the Gambino crime family of La Cosa Nostra
(the "Gambino Crime Family" or the "Family") is one of five organized crime
families headquartered in New York City.   The principle purpose of the Gambino
crime family is to generate money for its members and associates.   This is achieved
through various illegal means, including, inter alia, drug trafficking, robbery and

---

[1] The government filed its motion on August 11, 2011, at which point Burke and co-
defendant David D'Arpino were being tried together.   However, on August 25, 2011, the
Court severed the action as to D'Arpino.   The severance is of no consequence to either the
analysis in or outcome of the instant motion.

extortion, committed by various members and associates upon the orders of higher-ranking members. Members and associates are required to swear allegiance to the Gambino Crime Family (above allegiance to their own personal families) and, on penalty of death, never to reveal the Family's existence or secrets.  They also pledge to follow all orders issued by the Family's "boss," or leader, which could include the commission of murder.

Over the years, many members of the Gambino Crime Family have been tried in this district.  It has not been uncommon for members of the Family to conspire with, attempt to contact, attempt to bribe, track down and follow, or threaten jurors, potential jurors, witnesses, potential witnesses and victims.  (See generally Gov't Mem. (Docket No. 236) at 3-7.)  Most notably, members of the Family have traced the license plates of jurors, followed them to and from the courthouse, murdered a juror's cousin when a bribe to the cousin failed to result in an acquittal, frightened a victim-witness out of the country and even managed to contact and consult with an anonymous juror to secure an acquittal.  (See id.)

With specific reference to Burke, the government alleges that, when tried in 1982 by the State of New York for the murder of Daniel Zahn (the subject of Racketeering Act Two herein), Defendant's brother Anthony Burke contacted and intimidated a witness, both during and after the trial, even though Burke was acquitted.  Similarly, the government alleges that two witnesses reported threats

made against them during Defendant's 2002 trial for the murders of Bruce Gotterup and John Gebert (the subjects of Racketeering Acts Three and Five, and Counts Two, Three and Five).  That Burke is currently incarcerated does not diminish his ability to effect similar juror contact, as he is not alleged to have done the prior intimidation himself, but through his brother and at least one other Family member. Moreover, while Burke was convicted of Bruce Gotterup's murder, he is eligible for release in 2014, suggesting a strong motive to continue the pattern of intimidation if necessary to thwart the potential life sentences that could result from convictions for certain pending charges.

For these reasons, the Court finds that an anonymous jury is appropriate, as the government has satisfied the two-prong inquiry set forth in United States v. Thomas, 757 F.2d 1359, 1365 (2d Cir. 1985).  As stated therein, "there must be, first, strong reason to believe that the jury needs protection and, second, reasonable precaution must be taken to minimize the effect that such a decision might have on the jurors' opinions of the defendants."  Id.; see also United States v. Paccione, 949 F.2d 1183, 1192 (2d Cir. 1991).   As to the first prong, it is true that mere mention of organized crime is insufficient to demonstrate that the jury ought to be protected. See United States v. Vario, 943 F.2d 236, 241 (2d Cir. 1991).  However, inter alia, either (a) a "demonstrable history or likelihood of obstruction;" or (b) the possibility that the evidence at trial will illustrate a pattern of violence likely to frighten the jury substantiates the empanelling of an anonymous jury.  Both of

those circumstances apply in this case.  Not only has Defendant's brother attempted to contact and influence jurors, but so too have members of the Gambino Crime Family committed such acts for Burke's benefit.  Coupling this fact with the nature of the charges, all of which (save one predicate Racketeering act) are inherently violent, the Court finds that the jury in this case is entitled to anonymity and partial sequestration in the form of escorted travel by the United States Marshal Service to and from the courthouse. See Thomas, 757 F.2d at 1362 (anonymous jury warranted where narcotics enterprise included a "council" which approved murders of potential witnesses); United States v. Gotti, 2004 WL 2274712 (S.D.N.Y. Oct. 7, 2004) (seriousness of murder and attempted murder charges and organization's use of "violence as a matter of course" supported use of anonymous jury); United States v. Cacace, 321 F. Supp. 2d 532 (E.D.N.Y. 2004) (defendant's proclivity toward violence and history of obstruction of justice supported partially sequestered, anonymous jury).

To minimize any potential prejudicial affect upon the jurors that an anonymous empanelment may cause, the Court alone will conduct the voir dire and, in doing so, will provide the veniremen with neutral, plausible explanations for the security measures, such their right to privacy and the potential for media attention.  Moreover, the parties have already agreed upon and submitted a proposed questionnaire designed to uncover any juror biases and to permit Burke to make the same informed choices during selection as would otherwise be possible.

<u>See</u>, <u>e.g.</u>, <u>United States v. Barnes</u>, 604 F.2d 121, 140 (2d Cir. 1979) ("As long as a defendant's substantial rights are protected by a <u>voir dire</u> designed to uncover bias as to issues in the cases and as to the defendant himself" the reasonableness factor is satisfied.); <u>see</u> <u>also</u> <u>United States v. Tutino</u>, 883 F.2d 1125, 1133 (2d Cir. 1989) (finding reasonable a court-conducted <u>voir dire</u> omitting veniremen's names, addresses, and place of employment but inquiring into type of employment of veniremen and their families, marital status, military and religious background); <u>cf.</u> <u>United States v. Basciano</u>, 2011 WL 167579, at *5 (E.D.N.Y. Jan. 19, 2011).

For the foregoing reasons, the government's motion is granted.

SO ORDERED.


DATED:   March  30, 2012                    _____/s_____
             Brooklyn, New York                   Sterling Johnson, Jr., U.S.D.J.

6