

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

EMN/TM:JMK
F.#2009R00579

*271 Cadman Plaza East*
*Brooklyn, New York  11201*

May 4, 2012

By ECF and Hand Delivery

The Honorable Sterling Johnson, Jr.
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:  United States v. John Burke
         Criminal Docket No. 09-135 (S-7) (SJ)

Dear Judge Johnson:

    The government respectfully submits this reply to the defendant John Burke's April 19, 2012 motion in limine to admit prior testimony of now-deceased alibi witnesses related to the murder of Daniel Zahn.  For the reasons set forth below, the government respectfully submits that the defendant's motion should be denied.

I. Background

    As detailed in its prior submissions, the defendant, a long-time associate in the Gambino organized crime family of La Cosa Nostra ("Gambino crime family"), is charged in the above-captioned superseding indictment with racketeering conspiracy, murder in-aid-of racketeering, murder while engaging in or working in furtherance of a continuing criminal enterprise and a firearms offense.  In Racketeering Act Two of the racketeering conspiracy charge, the defendant is charged with conspiracy to murder and murder relating to his participation in the shooting death of Daniel Zahn on August 28, 1982.

    A.    Zahn State Murder Trial

    As the Court is aware, on November 22, 1982, a state grand jury in Queens County, New York, returned an indictment against John Burke, charging him with the murder of Daniel Zahn.

People v. John Burke, Ind. No. 4115/82 and 3617/82.  On November 15, 1983, Burke was acquitted by a jury of the Zahn murder.

At that trial, in addition to crime scene evidence, the state presented the testimony of 15 witnesses, including a witness to whom Burke stated that he was going to kill Daniel Zahn because Zahn had previously shot him in the throat; a witness who had seen Burke slowly circling Lenihan's Bar, where Zahn was, in a blue station wagon in the early morning hours of August 28, 1982 (immediately prior to the murder of Zahn[1]); and a witness to whom Burke stated that he had killed Zahn in retaliation for Zahn's having injured Burke in the throat.[2]

As set forth in the defendant's motion in limine and attached exhibits, five witnesses called by the defendant provided him with an alibi for the night of the Zahn murder: John Burke, Sr. (the defendant's father), Gennaro Deleva, Frank Morano, Barbara Musachio and William Cummings.  Each witness testified, in sum and substance, that between 3:00 a.m. and 4:00 a.m. on August 28, 1982 (early Saturday morning), the defendant was participating in the refinishing of the floor of a back room of Finnegan's Bar in Richmond Hill, Queens.  Deleva, the former owner of Finnegan's, and Musachio, a former barmaid at the bar, testified that they observed the defendant at the bar between 3:30 and 4:00 a.m., when the bar was closing.  Musachio further testified that the front and exit doors to the bar were locked once the bar had closed.  Musachio also testified that John Burke, Sr., Morano and the defendant had performed after hours work at Finnegan's as many about 10 times in total, on Friday or Saturday nights.  Morano, John Burke, Sr., and Cummings testified that they had participated in refinishing the floors at Finnegan's from approximately 3:30 a.m. until approximately 7:00 a.m. or 8:00 a.m. on August 28, 1982, and that no one had left the bar during that time.  John Burke, Sr., also testified that he used to work at Finnegan's but had performed after hours cleaning work at the bar only in the early morning hours of August 28, 1982.  Additionally, Burke, Sr., who admitted during cross-examination that he had access to and had read the entire police file for the case, including the names and addresses of

---

[1]   The evidence at trial established that between approximately 3:00 a.m. and 4:00 a.m. on August 28, 1982, Zahn was murdered shortly after leaving Lenihan's Bar while he was seated in the driver's seat of his car.  The cause of death was three shotgun wounds.

[2]   Burke was shot in the throat on May 20, 1982.

witnesses, and that his wife had told him "a little bit" about other witnesses' testimony during the course of the trial, stated that he was not angry that his son had previously been shot in the throat and had taken no action to locate his son's shooter. He further testified that he did not know who Zahn was until after Zahn was killed.[3]

Notably, during each alibi witness's direct examination, Burke's defense attorney directed the witness to the night of August 27, 1982 (a Friday night) and the early morning hours of August 28, 1982, without asking the witness to independently recall the dates in question. Each witness then recited almost precisely the same story regarding the defendant's participation in refinishing the floor of the back room at Finnegan's. The similarity is striking given the time that had elapsed since Zahn was killed and the witnesses testified that they had not discussed their testimony with each other. When cross-examined about how he knew that Burke had refinished the back room floor with him at Finnegan's in the early morning of August 28, 1982, Cummings, who was employed at a catering hall at the time, testified that he remembered the date of August 28, 1982, because he "very, very rarely" worked at the catering hall on Friday nights, but had worked the Friday night prior to assisting in refinishing the floors at Finnegan's.

## II.  Interviews of William Cummings

The only alibi witness who is currently alive is William Cummings. The government interviewed Cummings on multiple occasions in 2011 and 2012. During the course of those interviews, Cummings stated that prior to the Zahn state murder trial, John Burke, Sr., approached him and told him that his son was "in a jam," and that he needed Cummings to testify that the defendant was with them the night that they cleaned the floors at Finnegan's. Cummings, who was approximately 27 years old at the time of his testimony, further stated that John Burke, Sr., was a close friend of his father's, and that Burke, Sr., was a "bruiser" guy who was feared in the neighborhood. Cummings stated that he had seen Burke, Sr., get into fights on prior occasions, and that he believed that Burke, Sr., would do anything to protect his family.

---

[3]  One of the witnesses to Zahn's shooting of Burke on May 20, 1982 stated to law enforcement officers that John Burke, Sr., was looking for Zahn with a pump shotgun the day after Burke was shot in the throat.

Cummings further stated that, while he recalled that the defendant had refinished the floors at Finnegan's with him on one occasion, he did not have an independent recollection at the time of his testimony during the Zahn murder trial regarding the date that the refinishing of the floor at Finnegan's had occurred. He stated that he accepted Burke's defense attorney's representation as to the date as true. Additionally, he stated that he did not take any steps prior to testifying to verify that he had refinished the floor at Finnegan's with the defendant on August 28, 1982. He also stated that, in the course of his employment at a catering hall, he worked on Friday nights very regularly, in contrast to the testimony he had given during the trial. When asked about this contradiction, Cummings stated he probably "exaggerated" when he testified that he had "very, very rarely" worked on Friday nights during the time period in question, and that he probably said that in response to the prosecutor's question on cross-examination because he was "pissed" that he was being questioned about the date. He further stated that, while he did not feel threatened by John Burke, Sr., he may have felt obligated to testify for his son.

III. <u>Witness Tampering During the Zahn Murder Trial</u>

In the course of its investigation into the Zahn murder, the government also interviewed Susan Provenzano, who testified during the state's case-in-chief during the trial about having witnessed Burke circling Lenihan's Bar immediately prior to Zahn's murder. She stated that, prior to testifying, the defendant's brother, Anthony Burke, came to her house with her grand jury testimony and stated that she should say that she was drunk the night of the Zahn murder and that she did not remember anything. He further stated to her that it would be "in her best interest" to change her testimony. She also received telephone calls after that incident but prior to the trial in which individuals posing as detectives told her that it would be in "her best interest" if she did not testify at the trial.

Susan Provenzano further stated that another person who witnessed Burke circling Lenihan's Bar the night of the Zahn murder – Donna DeCarlo – stated that she had been called and told that she should not testify at the trial. At the trial, DeCarlo recanted her prior statements that she had seen Burke circling Lenihan's Bar immediately prior to Zahn's murder. Ali Selek, an individual who had told a detective that he had heard gunshots in the vicinity of the Zahn homicide while he was walking to work and had seen a red and white vehicle and a blue station wagon leave the area, also recanted his prior statements during the

5

trial. The morning after Selek recanted his prior statements, the state prosecutor stated to the court: "I was informed as I left court yesterday at the close of the day that Mr. Selek, the witness who testified yesterday, prior to coming into the courtroom, was approached by various people who are here on behalf of the defendant out in the corridor before he came into the courtroom." While the prosecutor stated that he had some prior indication that Selek may recant his prior statements before he testified, he further stated that, during Selek's testimony, one of the members of the gallery who had been attending the trial on behalf of the defendant moved behind the prosecution table, in the direct line of vision of Selek during his testimony.[4]

II. <u>Analysis</u>

In his motion <u>in limine</u>, the defendant argues that the trial testimony of the now-deceased alibi witnesses - John Burke, Sr., Gennaro Deleva, Barbara Musachio and Frank Morano – should be admitted as evidence because such testimony "clearly meets the criteria for admissibility" under Federal Rule of Evidence 807. As set forth below, the defendant's argument is without merit.

   A.   <u>Legal Standard</u>

Federal Rule of Evidence 807 ("Rule 807"), commonly referred to as the "catch-all" exception to the hearsay rule, "provides that statements not covered by Rule 803 or 804 but having equivalent circumstantial guarantees of trustworthiness are not excluded by the hearsay rule if they meet certain requirements." <u>United States v. James</u>, Cr. No. 02-0778, 2007 WL 1579977, at *4 (E.D.N.Y. May 31, 2007) (Johnson, J.) (internal quotations omitted). Rule 807 calls for the introduction of hearsay if "(i) it is particularly trustworthy; (ii) it bears on a material fact; (iii) it is the most probative evidence addressing that fact; (iv) its admission is consistent with the rules of evidence and advances the interests of justice; and (v) its proffer follows adequate notice to the adverse party." <u>United States v. Morgan</u>, 385 F.3d 196, 208 (2d Cir. 2004) (quoting <u>United States v. Bryce</u>, 208 F.3d 346, 350-51 (2d Cir. 1999)). As the Court noted in <u>James</u>, 2007 WL 1579977, at *3, Rule 807 is used as a "safety-valve" to prevent injustice, should be "used only rarely, and in exceptional circumstances" and

---

[4]   As the Court is aware from the government's motion for an anonymous and partially sequestered jury in this case, efforts were made to tamper with witnesses during Burke's state murder trial for the murders of Bruce Gotterup and John Gebert.

6

"appli[ies] only when certain exceptional guarantees of trustworthiness exist and when high degrees of probativeness and necessity are present." United States v. Bailey, 581 F.3d 341, 347 (3d Cir. 1978).  The Court has considerable discretion in determining whether hearsay evidence is admissible pursuant to Rule 807.  United States v. Rodriguez, 218 F.3d 1243, 1246 (11th Cir. 2000).

    B.    <u>Analysis</u>

    In this case, it is clear that "exceptional guarantees of trustworthiness" do not exist with respect to the testimony of the now-deceased alibi witnesses that the defendant seeks to admit at trial.  As is apparent from a review of the witnesses' trial testimony, none of the witnesses independently recalled the date upon which they observed the defendant at Finnegan's Bar and his participation in refinishing the floor of the back room of that bar without prompting from Burke's defense counsel.  Additionally, the one surviving alibi witness - William Cummings – confirms that his testimony as to the date that he saw the defendant at Finnegan's Bar was not trustworthy.  The overwhelming similarity in the nature of the alibi witnesses' testimony, despite having been given over a year after the night in question and purportedly without any prior coordination between the witnesses, coupled with the information provided by Cummings about the trustworthiness of his prior testimony, undercuts any indicia of trustworthiness that the now-deceased alibi witnesses' testimony may have had.  Additionally, information provided by Susan Provenzano and evidence from the trial transcript that certain individuals, including the defendant's brother, tampered with witnesses prior to and during the Zahn murder trial, further undermines the trustworthiness of the alibi witnesses' testimony.

    In his motion, the defendant relies heavily on United States v. Guerrero, Cr. No. 09-339, 2010 WL 1645109 (S.D.N.Y. April 20, 2010) (Sweet, J.), to argue that the now-deceased alibi witnesses' testimony should be admitted pursuant to Rule 807.  Burke's reliance on Guerrero is misguided.  In Guerrero, the government moved <u>in limine</u> to exclude eye witness testimony of an unavailable witness from a prior state murder trial.  In determining that the unavailable witness's testimony was admissible pursuant to Rule 807, the court in Guerrero noted that the unavailable witness had "no motive to lie."  2010 WL 1645109 at *2.  In this case, the same cannot be said for the alibi witnesses at issue.  John Burke, Sr., had a clear motive to lie for his son.  Additionally, as set forth above, the remaining alibi witnesses all knew John Burke, Sr., from Finnegan's Bar.  Also as noted above, Cummings characterized John Burke, Sr., as a

"bruiser" who everyone in the neighborhood feared. Considering the Burke family's access to the police reports of the Zahn murder investigation prior to the trial, including witness statements, and efforts by Anthony Burke to tamper with at least one witness who testified during the state's case-in-chief, the alibi witnesses clearly had an opportunity and a "motive to lie" in testifying for Burke, Sr., about his son's whereabouts the night of the Zahn murder.

## Conclusion

For these reasons, the government respectfully submits that the defendant's motion in limine to admit testimony from now-deceased alibi witnesses related to the Zahn murder should be denied.

Respectfully submitted,

LORETTA E. LYNCH
United States Attorney

By:     /s/
Jacquelyn M. Kasulis
Evan M. Norris
Whitman G.S. Knapp
Assistant U.S. Attorneys
(718) 254-6103/6376/6107

cc:  Counsel of Record (by ECF)
     Clerk of Court (SJ) (by ECF)